Good morning. Martin Guajardo on behalf of the petitioner, Paramjit Singh Mann. If you could keep your voice up, that would be helpful. Thank you. I'd ask the Court, since everyone's read the briefs and so forth, and both sides have been fairly lengthy in their presentations, in the briefs, in the arguments,  and that is, we have across the country hundreds, thousands of cases from the immigration courts. And I ask the Court, we're all aware of some of the newspaper articles that have come across everyone's desk indicating that not only is this in this circuit, but other circuits. I'd really rather talk about this case. And I want to, if I may, there's many cases, and many of these cases involve interpreters. Our case here, we went back to the Board of Immigration Appeals on a motion to reconsider and essentially presented a transcript in Punjabi. The Court, I'm sure, would take judicial notice that in immigration proceedings, you don't have simultaneous interpretation. In immigration proceedings, not everything that the parties say, the colloquy that takes place between the judge and the attorney, either for the government or for the respondent, that is not translated. The presentations that may be made, and at times, even the decision of the immigration judge is not translated. What I'm focused in, in this instance, is that we have presented to the Board of Immigration Appeals a transcript and I think as Mr. Rumsfeld was quoted as saying, you know, you go to war with the army that you have. And we've presented to the Board of Immigration Appeals a transcript that indicates that the translation was not quite accurate, notwithstanding that there wasn't a translation of everything that was said in the courtroom. And there is one crucial item, there's a crucial date that was not accurate, and we've discussed it in the brief. And I would ask that this Court, there is, we would ask that this case be remanded. We'd ask that this Court find a way that we can collectively, as the immigration bar, rely on having full and complete hearings interpreted. I'm with Judge Callan. I'd prefer to focus on this case. What particular date are you talking about and what difference does it make? I think that the date is the 1995 date in terms of when he graduated from school. We've looked at what was said in the official record. We've looked at the transcript that we've provided. What does the official record say? What does your transcript say and why does it make a difference? If I may, I'll answer the last question first. Why does it make a difference? It makes a difference because I think that the respondent is entitled to have an accurate translation. And to judge it from the standpoint, well, it wouldn't have really made a difference, I think it puts the burden on the wrong party. And what it does essentially, it says, well, you know, we can provide you an interpreter, and even if the interpreter is mediocre, if ultimately there is no prejudice, then that's what you're entitled to and nothing more. I think that due process and equal protection requires that this court exact from the agency that they provide an interpreter that is going to be completely accurate. Because the time is limited, I'd like to sort of interject here. I think I'm understanding your answer to be that as a practical matter, in terms of affecting the substance of the decision, it doesn't make any difference because you're not telling me that. You're saying, no, he's just entitled to an accurate translation. Am I understanding you properly? Yes. Okay. Yes. All right. I have a question I really need to have answered. All right. And that is, in this situation, the IJ made adverse credibility findings. And then the BIA did that, too. But the BIA made it on more narrow grounds than the IJ. Correct. Am I correct on that? All right. The question, let's say if I agree with you that the adverse credibility determination relied on the BIA is not supported by substantial evidence, can we look to the more comprehensive IJ's decision to determine whether the IJ's determination is supported by substantial evidence? I think we can. The question is what's going to be the result by looking at that, because presumably we're entitled to having a de novo review. And a de novo review then would mean that the board is not only looking. In this case, as you point out, the board has made their own determination. But I believe that what would be required for us, because this is what we've presented before the court, is to look at and be able to say, this determination now requires for us to send it back over to the immigration judge. Because if the immigration judge finds that he says, you know, you didn't see Ravinder for nearly 15 months, 18 months, and then all of a sudden he shows up at your house, I find that totally implausible. I find that's just completely unbelievable. Then the board looks at the same and they narrow it down. I think that we are faced, at least what we've tried to set forth in our brief, we're faced with a situation where did the board and did the immigration judge look at the reason that he gave for not bringing in additional evidence as the basis for finding him incredible? Is that what they didn't find his explanation sufficient? Is that what they did? And I think that when he's, when it goes, it's the heart of the translation issue as well. So I think that what we have here is we have a situation where we would need to have this case go back to the immigration judge and then. Well, so what if I say the BIA's decision is deficient, but I don't think that the IJ's decision is deficient? What do we do then? What do we tell the BIA to do? Or should, would a further remand to the IJ be inappropriate? Or what's the situation here? Because the BIA gives lesser reasons than the IJ does in this. Whether, you know, I'm not asking you to concede that the IJ's are sufficient, but the BIA gives lesser reasons. I think that either one is sufficient to have it sent back. Either one. Even though that the, if I understand the question from the Court, is if the Board's decision is much more narrow than what the judge said. I mean, haven't we covered it by reviewing essentially what the judge already said, even though the Board hasn't included it? I don't think so. I think that, from our vantage point, I think that it would have to go back. Let me ask you this, following on Judge Callahan's questions. I'm reading from the Board's decision, not the IJ's. It begins, the appeal is dismissed. The IJ identified reasons to conclude that the respondent's testimony was not alone sufficient to sustain the burden of proof. Among other things, the immigration judge, da-da-da-da-da. Well, as I read that introductory clause, among other things, I read that in favor of the Board as merely a reference of examples, rather than to say we, the Board, rely only on these things. That's to say, I'm not sure I can read the Board of Immigration Appeals' decision on credibility as actually resting on narrower grounds than the decision of the IJ. What's your response to that? I've read the transcript many times, and I think that it can go either way. Candidly, it could go either way for us. Here I'm not talking about the transcript. I'm talking about how do I read the IA's decision? What are they relying on? Are they relying only on the things that they specifically mentioned, or are they relying on the entirety of what the IJ relied on? Well, I think this Court has ruled that we should have a decision from the Board that we can identify what it is that they're relying on, and I don't know whether just simply by incorporating by reference or simply saying, you know, if you will, dot, dot, dot, that that's going to be sufficient. Assume for the moment, and it's only an assumption. I don't ask for a concession. Assume for the moment that we have in front of us the entirety of the IJ's reasons as to why the IJ found the petitioner here not credible. What's your response to those reasons? And I'd like some specifics here because these credibility-finding things are hard. We've got some, I'll call it this way, that sort of destroys thin in some ways. The IJ didn't catch him in sort of clean contradictions. This is not an easy case where he said X, but the truth is Y. But help me understand why we have enough ground to reverse the IJ on credibility. Well, I'd ask the Court to look at two items. One, the judge found that there was no doctor's letter provided by the applicant or by the respondent. I don't know that simply because, and this Court has already held, just because you don't have independent evidence to cooperate your claim, that your claim should be denied or that you should be found incredible. It seems to me that if, in this instance, the respondent, before the immigration judge, if the respondent indicates that he's afraid for the well-being of that doctor, if he is found to in some way be providing aid or assistance to him, even though he's here in the United States, that's not a reason to find him incredible. That's one. That's on the doctor's letter. Number two, the judge can't understand why is it that Ravinder, after not having seen him for such a long time, would drop by at his house. And here it seems that if the respondent before the immigration judge testifies, he says, look, this fellow came to see an agent over there. It was dark, and he decided, since he knows where I live, he decided to come by and stay with me. That was 15 or 18 months, 15-plus months from the time that he last saw him. It doesn't appear to me that we can now draw the conclusion that if Ravinder hadn't seen our client, that is almost an unbelievable story. I think it rings more of truth that an individual would say to the court, I have no idea he was coming over here to see the agent, and this is what happened. It was dark. Other factors came in. To me, those are two specific instances where we can come to a conclusion and say, we cannot accept a finding of incredibility just simply because that doesn't make sense to us here today. Thank you. We'll give you a little time to respond to the government. May it please the Court. My name is Ernesto Molina with the U.S. Department of Justice's Office of Immigration Litigation, and I represent the respondent, Alberto Gonzalez, in this case. Can you give me your best argument on the credibility, on the adverse credibility of what we can consider? Of what the scope of the court's review is? Yes, certainly, Your Honor. The government expresses agreement with, well, I should say with the suggestions of Judge Fletcher, that in this case it looks like the Board of Immigration Appeals is simply looking to the immigration judge's decision and citing some examples from the immigration judge's decision, but largely finding that the immigration judge's decision is supported by the record. Accordingly, in that type of a circumstance, this court has said that it will review the board's decision, except to the extent it relies on the immigration judge's decision. In this case, we have a board decision that seems to rely on that immigration judge's decision and simply cites some of the examples provided therein. Okay. So, all right, we have one that several and five times. You know, that doesn't seem good to me. Your Honor, it may be quite right in that. What the difference is between several and five times is you'd have a hard time getting out of counsel. But, again, that was one instance among many in this case. Right. Tell me all that you're relying on and give me your best argument on that. Well, they're largely cited by the consolidated brief provided by my office. So what I'll do is, you know, there's a list of at least 12 reasons given in that brief. Rather than read those all out to the court, I can do that if the court wants, but I suggest the court may want the government's focus. Now, part of the government's focus is going to be some of these instances. You know, why, let's see, there are first identity issues, which are always important to assessing credibility and determining some of these particular circumstances. The immigration judge here expressed difficulties finding or understanding who exactly Mr. Mann was. There were three different names he had gone by. It was hard to tell who exactly he was. That's one aspect. Further, he did not. But he had a driver's license and he had some school records. He had some school records and a driver's license. But why a passport wasn't produced, that's unclear. Whether the school records related to him, again, since there were three names, is one other difficulty. There's further the question of the failure to provide affidavits from family members, from a man with whom he lived in New Delhi, all of whom were available and all of whom he was apparently able to contact. Indeed, he got the driver's license and the school records from his father, he indicated, but was unable to obtain an affidavit from his mother, from his father, from his maternal grandfather, from his roommate, all of whom appeared to have been available. This court decided in a case called Sindhu that when an alien fails to provide corroborative evidence that was probably available, an adverse credibility determination can be made from that failure. In the Sindhu case, it was a failure to call the father as a witness or bring evidence from the father. There, this court explained that it's possible that the reason he wasn't called is that he wouldn't corroborate the claims of the petitioner in that case. Here, we have the circumstance of it may be that the father or the roommate would not corroborate those types of facts. Therefore, the board is allowed to reach that negative implication regarding credibility based on the absence of evidence. Let's see. Further, his father was not arrested at the time of Mr. Mann's arrest. Now, the supposed precursor to this arrest was the visiting of the friend to the family ranch. Now, that wasn't a ranch owned by Mr. Mann. That was a ranch owned by his father. Yet, when the police came, they only took Mr. Mann and did nothing to his father. No, I think it was a city. They lived in a house in the city. The farm is about 20 kilometers outside where the grandfather still lives. You're correct, Your Honor. Again, the friend did visit but did not arrest the father or anyone else who was of possible militant association age. The state is important because the State Department reflects that generally in that type of a case, the authorities will arrest both persons and bring them in. Therefore, the fact that that pattern wasn't followed brings some more doubt. Now, what I do need to reaffirm the Court is on is this fact that nobody comes to the Board of Immigration Appeals or the immigration judges with a presumption of credibility. Everyone has the burden of establishing that the testimony they're providing is credible. And in Mr. Mann's case, all these difficulties in the story he's presenting can create doubt in the immigration judge's mind and, in fact, did in this case. For that reason, the question is whether or not he met his burden of showing credibility. And in light of all these particular difficulties with the story presented, the immigration judge and the reasonable fact finder is allowed to reach the inference that there is a credibility problem, that not enough was presented, that there aren't enough explanations. Well, I think one of the areas was that it seems to me that it was a difference between the general and the specific. And my understanding of our case law is that an adverse credibility finding cannot be based on the difference in specificity between an alien's written statement accompanying his asylum application and his testimony before the IJ. But here, the BIA determination that the two were inconsistent, isn't that what the BIA is doing here because one's more specific than the other? That seems to be what the Board of Immigration is getting at. Now, what I think the Board was concerned about was that suddenly, rather than several instances, an exact number was generated. That is what seemed to catch the Board of Immigration. Some things seem to be gone into in more detail. Now, obviously, when I see someone that lists in their asylum application that they were raped and people were murdered in front of them and then they get up and testify and they forget to mention that, that's pretty significant. But on the other hand, if you say that there are several things that happened or whatever and then you go into, you testify to more detail when you come in and testify. Certainly, Your Honor. And I'd remind the Court that counsel did identify that, you know, sort of pinpointing the difference between several and five is a real hair-splitting effort. Now, that may be the weakest example relied on by the immigration judge. And I'd like to remind the Court of the Supreme Court's decision in United States v. Arvizu, where there was a type of whole record review at issue. And the Supreme Court explained that a court's task on review is not to conduct a divide-and-conquer approach, that it's not to shoot down every example independently or enough of them. You have to look at all of them. Yes, exactly. I mean, the IJ is looking at the people that are there. I understand all of that. Correct. And I was just reminding the Court, and, again, overall, based on all of these considerations, the question is whether or not the evidence compels a finding that Mr. Mann established his credibility before the immigration judge. And, in fact, in light of all those difficulties, that would seem problematic for Mr. Mann. Let me address a few more questions. The first couple of points I'd like to make are really in the government's favor. I think you've not made at least a complete case in support of the IJ's adverse credibility finding. For example, on identity, you didn't mention the IJ's discussion of the passport. The IJ said, well, you've testified that this was your own passport and that you'd gotten that passport in preparation for a trip that you were going to take. In the end, you didn't, but you traveled on your own passport. The normal pattern when people are smuggled through Canada on false passports is that the agent smuggling them insists upon a surrender of the passport. But this is not that case, because under your own testimony, you're not traveling on a false passport. You're traveling on your own passport. And I find the fact that you threw away the passport not consistent with the ordinary pattern. Certainly, Your Honor. And the second point, the IJ says he finds it odd, although he did say it was odd that his friend Mr. Singh would show up after this interval, but he finds it even more odd that the police would come back to your client, to come back to the petitioner, Mr. Mon, about 17 months later on a second visit, even though there has been no visit by Mr. Singh. They say there is, but that timing is suspicious to him. What's happening here is that the IJ is saying, you know, this story doesn't match the sorts of stories that I've previously heard that seem to me to be credible. Okay, those are a couple of points, I think, in your favor, and we may get a response in rebuttal. I don't know what I'm going to do, what I should do, if anything, or what we should do, if anything, with the following. The record of this particular IJ is a particular, how do I want to say this, an outrider. Among the IJs in San Francisco, this particular IJ has a grant rate lower than any other IJ by a considerable margin. And I do not know what to make of that, except that this IJ doesn't respond to evidence by asylum seekers in the same way that any of the other IJs do. What am I supposed to do with that? Okay, I'll address the second point first, Your Honor. Well, the first two you don't really need. I mean, they're in favor of him. I mean, they're in favor of you. That's really why. There's a problem with the IJ. It's a problem. Well, the substantial evidence test, Your Honor, covers a wide variety of possible decisions that a fact finder can make. The question before the Court is whether all reasonable fact finders would be compelled to make a different finding. It's understandable that the Court might be concerned that there's bias among the immigration judges or that one immigration judge may need to have his fact finding recalibrated. But, again, before the Court, the Court has an ample record in this particular case of the problems that were confronting the immigration judge. It had the Board of Immigration Appeals looking at that in an appellate situation and determining that the proceedings went well enough. If there were any major concerns regarding bias, the Board of Immigrations would filter that out or the Attorney General himself would start to take considerable action. You have more optimism about the ability of the BIA to filter out bad IJs than I do. And I have to say, I'm not saying that this particular judge is a bad IJ. I'm not saying that. But I am saying that the BIA has not shown itself as particularly capable in sorting out and getting rid of bad IJs. The government understands the Court's concerns, and I see them all the time. If there are any further questions, I'll address them. Well, I would like to say for the record, I don't know this IJ, so I don't know anything about that. Certainly, Your Honor. I'm unaware of the particular fact scenario brought up by the Court, but I can certainly begin to convey that to certain folks in Washington, D.C. And I'm not saying that this is a – there are bad IJs, but I am not saying that this is a bad one. And as I suggest, Your Honor, if an immigration judge perhaps needs his fact-finding a little bit recalibrated, I'll certainly bring those back to my office and we'll raise those concerns. Thank you. Response? No. Looking at all the facts in the case and looking at the decision, the judge board, I think that we – there isn't substantial evidence here to support that decision. And I can only offer to the Court that come next month, it will be 29 years that I've been doing immigration cases and I've worked with the agency as well as the trial attorney. And I can say that in looking at the various points that Your Honor has brought out and have asked for comment, it's difficult for me to stand here and say that the determination by the IJ, what he finds to be incredible, particularly if a non-citizen is telling his story and there isn't anything there that he can offer to the Court as to possibly why he doesn't have that identity document, that passport, or that he has that – that he doesn't have that affidavit. That we can now simply conclude, as the Court points out, you know, this doesn't match what I normally see, but I'm going to find that it's so incredible that this is – I'm just going to find that it's incredible and I'll deny your application. I think that – I think the facts of this case, as best as they were developed in the record, compel us to have the case returned to the Immigration Court or to make a finding that in fact this petitioner has presented a credible claim for asylum in the United States. Thank you. Thank you. Thank both sides for their argument in this case. The case of Mann v. Gonzales is now submitted for decision.
judges: Noonan, W.fletcher, Callahan